# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Joseph Lee Bellanger,                                    Civ. No. 19-2770 (PAM/BRT)

                        Petitioner,

v.                                                          **REPORT AND**
                                                         **RECOMMENDATION**
Warden Guy Bosch,

                        Respondent.

---

Joseph Lee Bellanger, OID # 219672, MCF Stillwater, 970 Picket Street North, Bayport, MN 55003, *pro se*.

Braden Sczepanski, Esq., Becker County Attorney's Office, 931 Lake Ave., Detroit Lakes, MN 56501, counsel for Respondent.

Matthew Frank, Esq., and Edwin William Stockmeyer, III, Esq., Office of the Minnesota Attorney General, 445 Minnesota St., Suite 1800, St. Paul, MN 55101, counsel for Respondent.

---

This action comes before the Court on (1) Petitioner Joseph Lee Bellanger's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1, Habeas Pet.). For the following reasons, this Court recommends denying the Petition and dismissing this action.

## I.    Background

In May 2015, authorities charged Petitioner with two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(e)(i).[1] *See* Register of Actions, *State v. Bellanger*, Case No. 03-CR-15-1258 (showing charges) ("*Bellanger* Criminal-Case Docket").[2] Petitioner pleaded not guilty to both charges, but in April 2016 a jury convicted him on both counts. *See id.*; *see also State v. Bellanger*, No. A16-1182, 2017 WL 3974297, at *1 (Minn. Ct. App. Sept. 11, 2017) (discussing case). On April 27, 2016, the Becker County District Court sentenced Petitioner to 186 months imprisonment. (Habeas Pet. 1.) *See Bellanger* Criminal-Case Docket

Petitioner filed a direct appeal with the Minnesota Court of Appeals. *See Bellanger*, 2017 WL 3974297, at *1. (Habeas Pet. 2.) He argued "that (1) the district court [had] abused its discretion in ruling that the state could impeach him with two prior felony convictions and (2) he [was] entitled to a new trial because some jurors expressed bias during voir dire." *Bellanger*, 2017 WL 3974297, at *1. The Court of Appeals affirmed Petitioner's conviction in a decision dated September 11, 2017. *Id.* Petitioner

---

[1]    In relevant part, the operative version of § 609.342 stated that "[a] person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age . . . is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists: . . . (e) the actor causes personal injury to the complainant, and either of the following circumstances exist: . . . (1) the actor uses force or coercion to accomplish sexual penetration . . . ."

[2]    The state-court records cited in this Report and Recommendation are not attached to any filings. They are publicly available, however, and this Court may take judicial notice of public court records. *See, e.g.*, *Bellino v. Grinde*, No. 18-CV-1013 (NEB/LIB), 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019) (citing cases).

petitioned the Minnesota Supreme Court for review, but petition was denied on November 14, 2017. *See id.*

Petitioner states that on April 11, 2018, he filed a petition for postconviction relief in Minnesota state court.[3] (*See* Habeas Pet. 3.) The state court denied that petition in a decision dated August 23, 2018. *Id.*; *Bellanger* Criminal-Case Docket. Petitioner suggests that he appealed this decision, but the *Bellanger* Criminal-Case Docket does not reflect any such appeal, and there is no record of an appeal in the Minnesota appellate courts' searchable online records.

On July 25, 2019, Petitioner filed a petition for a writ of habeas corpus in Minnesota state court. *See* Pet. for a Writ of Habeas Corpus Relief, *Bellanger v. Miles*, No. 82-CV-19-3641 (Minn. Dist. Ct. July 25, 2019); Register of Actions, *Bellanger v. Miles*, No. 82-CV-19-3641 (Minn. Dist. Ct.) (*Bellanger* Habeas Docket). Petitioner also applied to proceed *in forma pauperis* (IFP) in his habeas action. *See Bellanger* Habeas Docket. The Washington County District Court entered a deficiency notice that same day, stating that Petitioner's petition was not signed. *See* Deficiency Notice, *Bellanger v. Miles*, No. 82-CV-19-3641 (Minn. Dist. Ct. July 25, 2019). On August 8, 2019, Petitioner refiled his habeas petition; this time, the petition was signed. *See* Pet. for a Writ of Habeas Corpus Relief, *Bellanger v. Miles*, No. 82-CV-19-3641 (Minn. Dist. Ct. Aug. 8, 2019).

---

[3]     The *Bellanger* State-Court Docket suggests that the state court filed its decision on April 16, 2018, but for present purposes this Court will assume that the date noted in the Petition is the correct one.

On August 20, 2019, the Washington County District Court entered an order denying Petitioner's IFP application. *See* Order, *Bellanger v. Miles*, No. 82-CV-19-3641 (Minn. Dist. Ct. Aug. 20, 2019) ("August 2019 Order"). That order stated that Petitioner's IFP application failed to meet two Minnesota statutory requirements: (1) it failed to state that Petitioner had exhausted inmate complaint procedures concerning the underlying matter, and (2) it failed to state that his claim was not substantially similar to a previous claim. *See id.* at 1; Minn. Stat. § 563.02, subds. 2(a)(1), 2(a)(2)(i) (establishing requirements). The court gave Petitioner thirty days to either pay the action's filing fee or submit a corrected IFP application; it warned Petitioner that if he "fail[ed] to comply," then "his petition may be dismissed." Aug. 2019 Order 1–2. There is no evidence that Petitioner ever paid the filing fee or submitted a corrected IFP application. *See Bellanger* Habeas Docket. On January 29, 2020, the state court dismissed Petitioner's habeas action. *Id.*

Petitioner filed the present Petition on October 23, 2019. (Habeas Pet. 1.) The Petition challenges Petitioner's April 2016 conviction, raising four grounds for review. *(Id.* at 1, 4–12.)

- First, Petitioner claims that he received ineffective assistance of counsel and that his prosecutor committed prejudicial misconduct related to the introduction and use at trial of cell-phone video footage of the criminal-case victim. *Id.* at 4–5.

- Second, Petitioner claims that he also received ineffective assistance of counsel because his counsel failed to properly investigate certain purported factual discrepancies in the evidence against Petitioner. *Id.* at 6–7.

- Third, Petitioner presents various factual claims that he believes suggest his innocence. *Id.* at 9. These include points made in a July 2015 "investigative report" about the criminal-case victim's interactions with others. *See id.* As part of

4

this discussion, Petitioner argues that he received ineffective assistance of counsel because his attorney did not sufficiently attack inconsistencies in the victim's testimony and failed to call witnesses that Petitioner believes would have testified in his favor. *Id.*

- Fourth, Petitioner states that while he was in "jail awaiting trial," an individual named Trevor Smith was in the same facility. *Id.* at 11. Petitioner states that he learned from Smith certain exculpatory information about the criminal-case victim. *See id.* Petitioner claims that he provided his counsel this information, but his counsel failed to investigate Smith's allegations and did not follow Petitioner's recommendation that Smith be put on the defense trial-witness list. *See id.* Petitioner contends that this also constituted ineffective assistance of counsel. *See id.*

On September 8, 2020, Respondent filed an Answer arguing that the Petition should be denied and the present matter dismissed because the applicable statute of limitations bars the Petition. (Doc. No. 19, Answer.) On September 30, 2020, Petitioner filed a Reply arguing that he should be excused from complying with the statute of limitations because the DOC obstructed him from filing the Petition by transferring him to a different prison. (Doc. No. 20, Reply.)

## II.    Analysis

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitations period for a state prisoner to file a federal habeas corpus petition under 28 U.S.C. § 2254. See 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run on the latest of a series of dates including, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The "time during which a properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2).

The Becker County District Court entered the criminal judgment reflecting Petitioner's conviction and sentence on April 27, 2016. *See Bellanger* Criminal-Case Docket. The Minnesota Court of Appeals affirmed that judgment on September 11, 2017. *See Bellanger*, 2017 WL 3974297, at *1. After Petitioner sought review from the Supreme Court of Minnesota, that court denied his petition for discretionary review on November 14, 2017. *See id.* At that point, Petitioner had 90 days—until February 12, 2018—to file a petition for a writ of certiorari from the U.S. Supreme Court. *See* U.S. Sup. Ct. R. 13(1). When he failed to do so, his conviction became final for purposes of § 2244(d)(1)(A). *See, e.g.*, *Boston v. Weber*, 525 F.3d 622, 624 (8th Cir. 2008) (citing *Curtiss v. Mt. Pleasant Corr. Facility*, 338 F.3d 851, 853 (8th Cir.2003)); *Shannon v. Minn. Dep't of Corr.*, No. 18-CV-0646 (WMW/LIB), 2019 WL 3325834, at *5 (D. Minn. June 4, 2019) (citing authorities), *report and recommendation adopted*, 2019 WL 3322918 (D. Minn. July 24, 2019). Section 2244(d)(1)(A)'s limitations period was thus set to expire on February 12, 2019.

Petitioner filed his state-court petition for postconviction relief on April 11, 2018—58 days later. (Habeas Pet. 3.) That petition was denied on August 23, 2018, and Petitioner never appealed. *See Bellanger* Criminal-Case Docket. Given his failure to appeal, the district court's denial of Petitioner's postconviction-relief petition became final on October 22, 2018. *See* Minn. St. § 590.06 (stating that one must appeal from denial of postconviction-relief petition within 60 days after entry of order denying

petition); *Jackson v. Minnesota*, No. 12-CV-1545 (JRT/JSM), 2012 WL 3013731, at *4 (D. Minn. July 2, 2012) (applying § 590.06 in context of determining timeliness of § 2254 petition), *report and recommendation adopted*, 2012 WL 2979055 (D. Minn. July 20, 2012). As a consequence, Petitioner's § 2244(d)(1)(A) limitations period began to run again on October 23, 2018. Because 58 days of the period had previously elapsed, Petitioner had 307 days remaining to file a § 2254 petition. Petitioner's deadline to file was therefore August 26, 2019, but Petitioner did not file his present Petition until October 23, 2019, well after that deadline. The Petition is therefore untimely unless something further tolled the August 26, 2019 deadline.

As noted above, on July 25, 2019, Petitioner filed a state-court petition for a writ of habeas corpus that the Washington County District Court ultimately dismissed on January 29, 2020. Under § 2244(d)(2), if that petition qualifies as a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim," then its filing tolled Petitioner's deadline to file the present Petition, making the Petition timely. The Court must therefore determine whether the state-court petition qualifies under § 2244(d)(2).

Petitioner's state-court habeas petition was plainly an application for collateral review with respect to his underlying conviction. The issue that remains is whether the state-court petition was "properly filed" for § 2244(d)(2) purposes. In *Artuz v. Bennett*, the U.S. Supreme Court discussed what rules a state-court application must comply with in order to be "properly filed." 531 U.S. 4 (2000). For present purposes, the key portion

of *Artuz* indicates that failing to pay a filing fee makes the relevant petition improperly filed:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, *and the requisite filing fee*. . . .

*Id.* at 8 (citations and footnote omitted; emphasis added); *see also id.* at 9 ("If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending*, but not *properly filed*." (emphasis in original)).

     *Artuz* itself did not concern a failure to pay a filing fee, but the Eighth Circuit relied upon it to hold that an application for postconviction review is not "properly filed" when the applicant fails to pay filing fees and verify the application as required under state law. *Runyan v. Burt*, 521 F.3d 942, 945 & n.3 (8th Cir. 2008) (citing *Artuz*, 531 U.S. at 8.). The petitioner in *Runyan* argued that an order sent to him by the state court suggested his "application had been filed and payment of the filing fee . . . was only a formality." *Id.* at 945 n.3. The Eighth Circuit rejected that argument, and found that he "failed to comply with the applicable Iowa laws and rules governing his initial Iowa PCR application by failing to pay the applicable filing fee and by not properly verifying the application." *Id.* at 945. As a consequence, the court concluded that "the district court correctly found Runyan's Iowa PCR application was not properly filed until May 24, 2000, when Runyan's errors were corrected." *Id.*

In light of this precedent, this Court finds that Petitioner's state-court petition for a writ of habeas corpus was not "properly filed." Petitioner's IFP application was denied because he failed to follow Minnesota statutory rules, and there is no indication that Petitioner ever paid the relevant filing fee or submitted a corrected IFP application.[4] The Court thus concludes that Petitioner's state-court petition was not "properly filed" for § 2244(d)(2) purposes. As such, the petition's filing did not toll Petitioner's deadline for filing the present Petition, which is therefore untimely and should be dismissed.[5]

### B.    Equitable Tolling

Petitioner argues, however, that the limitations period should be equitably tolled because state action impeded the Petition's filing. (*See* Reply 2–3.). Specifically, Petitioner argues that his transfer "from Rush City prison to Farib[a]ult, then from Farib[a]ult to Stillwater prison" made it "extremely difficult to meet the deadline." (*Id.* at

---

[4]    The Court is aware of the decision in *Cash v. Houston*, in which a district court rejected the argument that a postconviction-review application had been improperly filed because of a failure to pay a filing fee. No. 06-CV-3073, 2008 WL 2568265, at *6 (D. Neb. June 25, 2008). *Cash* is distinguishable, however, because that decision rests on the fact that under Nebraska state law one bringing a postconviction case need not pay filing fees in advance. *See id.* at *6 n.3 (citing *State v. Jackson*, 730 N.W.2d 827, 830–32 (Neb. Ct. App. 2007)). No such provision exists in Minnesota law.

[5]    Petitioner does not argue that equitable tolling should apply here, but even if he had, this Court would disagree based on the record. "Equitable tolling is available only if a petitioner shows that: (1) he has diligently pursued his rights; and (2) some extraordinary circumstance beyond his control prevented timely filing." *Gustafson v. Bolin*, No. 19-CV-1963 (SRN/ECW), 2020 WL 759951, at *7 (D. Minn. Feb. 14, 2020) (citing *Nelson v. Norris*, 618 F.3d 886, 892 (8th Cir. 2010)). Here, this Court need not determine whether Petitioner has pursued his rights diligently, for the Petition provides no hint of any "extraordinary circumstance beyond his control" that prevented him from filing the Petition earlier.

2.) While it is true that the 1–year limitation period may be equitably tolled when "extraordinary circumstances beyond a prisoner's control prevent the timely filing of a petition," equitable tolling offers "an exceedingly narrow window of relief." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) (citations omitted); *Deroo v. United States*, 709 F.3d 1242, 1246 (8th Cir. 2013). The Eighth Circuit has held that "[t]he plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition." *Earl*, 556 F.3d at 726.

Here, while the transfers Petitioner cites may have been inconvenient, he has presented no evidence showing they actually prevented him from filing his Petition. This Court therefore concludes that Petitioner is not entitled to equitable tolling, and as a result, § 2244(d)(1)(A) and § 2244(d)(2) establish the relevant limitations period. *See, e.g.*, *Weinrich v. Roper*, No 4:08–CV–1116, 2010 WL 2773535, at *2 (E.D. Mo. July 14, 2010) ("In general, the difficulties attendant upon prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure documents, do not by themselves qualify as extraordinary circumstances.") (citation omitted). In this Court's view, applying those provisions to the chronology presented above establishes that Petitioner's present Petition is untimely.

## C.    Actual Innocence

Petitioner also asserts that the statute of limitations should be tolled because he is actually innocent of the crime for which he was convicted. (Habeas Pet. 16.) Actual innocence may serve "as a gateway through which a [habeas] petitioner may pass [where] the impediment is . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 568

U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare" and require "new evidence" that shows "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) and *House v. Bell*, 547 U.S. 518, 538 (2006)). A petitioner must present "new evidence not present at the original trial." *Buermann v. Roy*, 2016 WL 4179868 *2 (D. Minn. 2016) (quoting *Johnson v. Norris*, 170 F.3d 816, 817-18 (8th Cir. 1999).

Here, Petitioner argues throughout his filings that various evidence available to him prior to or at the time of his trial establishes his alleged innocence. (*See* Habeas Pet. 4–5, 7, 9, 11; Reply 3–4.) However, in order to establish a gateway claim for actual innocence that would toll the limitations period, Petitioner is required to proffer "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Kidd v. Norman*, 651 F.3d 947, 952 (8th Cir. 2011) (quoting *Schlup*, 513 U.S. at 324). Petitioner has failed to identify any *new* evidence that shows that no reasonable juror would have voted to convict him, and thus equitable tolling on that basis is not warranted in this case. *McQuiggin*, 568 U.S. at 386. Accordingly, this Court concludes that this action is indeed barred by the one-year statute of limitations imposed by § 2244(d)(1), and therefore recommends that this action be dismissed with prejudice.

### D.    Certificate of Appealability

Finally, a § 2254 habeas petitioner cannot appeal a denial of his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R.

App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Furthermore,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, this Court finds it unlikely that any other court, including the U.S. Court of Appeals for the Eighth Circuit, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. This Court therefore recommends that Petitioner not be granted a COA in this matter.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Petitioner Joseph Lee Bellanger's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (**Doc. No. 1)** be **DENIED**; and

2.      No certificate of appealability be issued.

12

November 24, 2020.                    *s/ Becky R. Thorson*
                                      BECKY R. THORSON
                                      United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).